IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| BERNICE GUNN | ) | Bankruptcy Case No. 06-80646 |
| | ) | |
| Debtor, | ) | |
| _____ | ) | |
| | ) | |
| BERNICE GUNN | ) | On Appeal from the |
| | ) | Bankruptcy Court |
| Appellant, | ) | |
| | ) | Adv. Pro. No. 06-08049 |
| v. | ) | |
| | ) | CASE NO. 3:07-cv-233-WKW |
| TITLEMAX OF ALABAMA, INC., | ) | |
| d/b/a TITLEMAX OF ALEXANDER | ) | |
| CITY #1 | ) | |
| Appellee. | ) | |

**MEMORANDUM OPINION AND ORDER**

The cause is before the court on appeal from the United States Bankruptcy Court of the Middle District of Alabama after the granting of Appellee's Rule 12(b)(6) Motion to Dismiss. For the reasons given below, the bankruptcy court's order of dismissal is AFFIRMED, and the case will be REMANDED to the bankruptcy court for further proceedings.

**I. FACTS AND PROCEDURAL HISTORY**

On October 22, 2005, Plaintiff/Appellant Bernice Gunn ("Gunn") entered into a "consumer credit" transaction with the Defendant/Appellee TitleMax of Alexander City #1

("TitleMax") where she pledged the title to her 1995 Mitsubishi Galant automobile as security. (Compl. ¶ 7.) This transaction is evidenced by a four-page pawn ticket signed by Gunn and a TitleMax agent. (Compl. Ex. B.) The terms of the transaction were that Gunn received cash amounting to $500.00 in United States currency (referred to as "Principal Loan Amount" and "Amount Financed"), and that the monthly interest rate was 15.99%, the pawn charges were $79.95, the amount due at the end of the thirty-day period was $579.95 ("Total of Payments"), and the date the pawn charges were due was November 21, 2005 ("Maturity Date"). (*Id*. at 1.)

The pawn ticket provides that the transaction can be renewed and the maturity date deferred:

> **Redemption and Request for Deferral or Renewal.** The terms of this paragraph will not apply if you do not meet our credit criteria or if the pledged goods have been taken into custody by a court or by a law enforcement officer or agency. On the Maturity Date or within 30 days thereafter (the "Grace Period"), if you choose not to redeem the pledged goods but request that we continue to hold the pledged goods for an additional thirty days ("Deferral Period"), then we will hold the pledged goods during the Deferral Period in exchange for your payment of the pawnshop charge owing, which may also include a prorated pawnshop charge ("Prorated Pawnshop Charge") for holding the pledged goods through the date of the deferral. The Deferral Period will run from the date that you make much payment and the Maturity Date will be the 30th day after such payment. Likewise, if within the 30-day Grace Period after the end of any Deferral Period or subsequent Deferral Period, you request that we continue holding the pledged goods for an additional thirty days, then we will hold the pledged goods during such additional Deferral Period in exchange for such pawnshop charge. **Furthermore, any time before the expiration of any Deferral Period or subsequent Deferral Period, you may choose to redeem or repurchase the pledged goods by paying the amount of cash advanced and original pawnshop charge, plus any unpaid, Prorated Pawn Charge.**

2

(*See* Compl. Ex. B. at 4.)

After the execution of the Pawn Ticket, the parties entered into a series of "subsequent loan agreements" in which a pawn charge was assessed by TitleMax for each. (Compl. ¶ 9.) A representative copy of one of the loan agreements was attached to the complaint. (Compl. Ex. C.)

On July 21, 2006, Gunn paid a $63.93 pawn charge and received a "Customer Receipt" indicating the principal due was $399.82, the interest due was $63.93, the total amount due was $463.75, and the interest due date was August 21, 2006. (Compl. Ex. C.) The customer receipt was signed by Gunn. (*Id.*)

Gunn alleges TitleMax violated the disclosure requirements of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*, by failing to provide allegedly required TILA disclosures when Gunn entered into the subsequent loan agreements with TitleMax. (Compl. ¶ 10.) Gunn further alleges TitleMax's security interest on her automobile is invalid because the subsequent loan agreements do not include a security agreement. (Compl. ¶ 14.)

Gunn does not allege that TitleMax violated TILA in connection with the original October 22, 2005 Pawn Ticket, nor does she allege the original obligation was ever satisfied or extinguished and replaced by a new obligation. Furthermore, she does not allege the security interest granted by her in the original Pawn Ticket was ever satisfied or cancelled.

Gunn filed a Chapter 13 Bankruptcy petition on August 18, 2006, and filed an Adversary Complaint against TitleMax on October 14, 2006. On February 15, 2007, the

3

Bankruptcy Court entered an order dismissing Gunn's Complaint with prejudice. On February 23, 2007, Gunn filed a Notice of Appeal.

## II. JURISDICTION AND VENUE

This is an appeal from an Order of Dismissal entered by the United States Bankruptcy Court of the Middle District of Alabama which dismissed Adversary Proceeding No. 06-08049 with prejudice. The matter before the Bankruptcy Court was a core proceeding under 28 U.S.C. § 157(b) because it concerned the administration of the bankruptcy estate and requested the determination of the validity of TitleMax's lien. This court has appellate jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a), which states that the district courts of the United States have jurisdiction over appeals from final judgments, orders, and decrees of the United States bankruptcy courts.

## III. STANDARD OF REVIEW

A district court reviews the decision of a bankruptcy court independently. *Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush)*, 62 F.3d 1319, 1322 (11th Cir. 1995). A bankruptcy court's conclusions of law are reviewed *de novo* while its findings of fact are reviewed under the clearly erroneous standard. *General Trading Inc. v. Yale Materials Handling Corp.*, 119 F.3d 1485, 1494 (11th Cir. 1997). Because the lower court made no findings of fact, this court's standard of review is *de novo*.

"[I]n order to survive a motion to dismiss for failure to state a claim, the plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Berman v. Blount*

4

*Parrish & Co., Inc.*, 523 F. Supp. 2d 1298, 1299 (M.D. Ala. 2007) (quoting *Bell Atl. Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1974 (2007)). Plaintiff's "[f]actual allegations must be enough to raise a right to relief above a speculative level . . . on the assumption that the allegations in the complaint are true." *Twombly*, 127 S. Ct. at 1965. The pleadings must do more than merely "le[ave] open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." *Id.* at 1968 (internal quotation marks and alteration omitted). In considering a defendant's motion to dismiss, a district court "must take the complaint's allegations as true and read them in the light most favorable to the plaintiffs." *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993).

## IV. DISCUSSION

### A.  *Count I – Truth in Lending Act Claim Dismissed by Bankruptcy Court*

Gunn argues that after she entered into the original pawn transaction with TitleMax, she entered into separate subsequent loan agreements, each of which required new TILA disclosures and which TitleMax failed to provide. TitleMax argues that the subsequent loan agreements were actually renewals of the original pawn transaction requiring no new TILA disclosures. The court holds that the subsequent loan agreements were in fact renewals requiring no new TILA disclosures and, therefore, affirms the bankruptcy court's order of dismissal as to this count.

#### 1.  **Extensions of the Pawn Transaction**

Under Alabama law, pawn transactions are governed by the Alabama Pawnshop Act.

5

*See* Ala. Code §§ 5-19A-1 – 5-19A-20. A pawn transaction is defined as "[a]ny loan on the security of pledged goods or any purchase of pledged goods on condition that the pledged goods are left with the pawnbroker and may be redeemed or repurchased by the seller for a fixed price within a fixed period of time." Ala. Code § 5-19A-2(3). The pawn ticket's terms provided that Gunn would receive a $500 loan due in 30 days at a specified interest rate in exchange for granting TitleMax a security interest in her automobile. The terms further provide for redemption of the pledged automobile for a fixed price after a fixed period of time. Thus, the loan transaction which Gunn characterizes as a "consumer credit" transaction was in fact a pawn transaction, making the Alabama Pawnshop Act applicable.

The Alabama Pawnshop Act anticipates extensions of the maturity date. "The pawnshop charge . . . shall be deemed earned, due, and owing as of the date of the pawn transaction and a like sum shall be deemed earned, due, and owing on the same day of the succeeding month." Ala. Code § 5-19A-7(b). This provision authorizes a subsequent pawn charge for the succeeding month, indicating an extension of the maturity date. Even though other sections have specific requirements for pawn tickets and their contents at the time of the execution of a pawn transaction, this section of the statute does not make any requirements for creating separate or additional pawn tickets. *See* Ala. Code §§ 5-19A-3, 5-19A-4, and 5-19A-5. This section thus evidences that the legislature did not intend for the creation of additional pawn tickets upon the extension of the original one.

The pawn ticket itself also provides for the extension of the pawn transaction. The

6

redemption provision in the pawn ticket, (*see* Compl. Ex. B at 4), states that Gunn may at her choice not redeem the automobile on the maturity date and may instead extend the maturity date for thirty more days upon payment of an additional pawn charge. When this is done, the original pawn transaction is renewed and the maturity date is deferred. The customer receipt states that the pawn can only be renewed or extended in thirty-day increments and upon payment of the interest due or the pawnshop charge. Moreover, it states that Gunn may choose to redeem the automobile by paying back the amount of cash advanced, plus any unpaid, prorated pawnshop charge. Thus it is clear the parties' agreement was to extend the maturity date of the original pawn transaction under specific conditions, with all of the material terms still applicable. There is no inconsistency between Alabama law and the pawn ticket regarding the availability and use of extensions to the pawn transaction. Therefore, the court finds that the "subsequent loan agreements" are actually extensions of the original pawn transaction which merely deferred the maturity date by thirty days.

### 2. New Disclosure Requirements under TILA

The issue that remains in the first count is whether TILA and its implementing regulations create any duty of disclosure in a pawn transaction where the maturity date is routinely extended by the parties every thirty days. TILA provides in part that where the information initially disclosed is subsequently rendered inaccurate due to an agreement formed after delivery of the required disclosures, the inaccuracy that results does not

7

Case 06-08049   Doc 32   Filed 03/31/08   Entered 04/01/08 12:44:31   Desc Main
Document      Page 7 of 12

constitute a violation of disclosure requirements. 15 U.S.C. § 1634. The TILA regulations promulgated by the Federal Reserve Board ("FRB"), and commonly known as Regulation Z, *see* 12 C.F.R. § 226 (2006), are more specific in that they state that new disclosures may be required under three specific circumstances. Regulation Z, 12 C.F.R. § 226.17(e) (2006). The first and second circumstances, relating to certain residential mortgages, Regulation Z, 12 C.F.R. § 226.19 (2006), and events occurring before consummation of a loan agreement, Regulation Z, 12 C.F.R. § 226.17(f) (2006), are not relevant here.

The third circumstance that may require new disclosures deals with "refinancings" and is the core of Gunn's theory of relief. In Regulation Z, the term refinancings is defined as follows:

> A refinancing occurs when an existing obligation that was subject to this subpart is satisfied and replaced by a new obligation undertaken by the same consumer. A refinancing is a new transaction requiring new disclosures to the consumer. The new finance charge shall include any unearned portion of the old finance charge that is not credited to the existing obligation.

Regulation Z, 12 C.F.R. § 226.20(a) (2006). Thus, for a refinancing to occur, the original obligation must be satisfied and replaced by a new obligation. An extension of the maturity date does not satisfy the pawn transaction, nor does it create a new obligation. It merely extends the original pawn ticket by postponing the date on which the pledgor must redeem the automobile.

The FRB's Official Staff Interpretations regarding the TILA regulations are determinative. "The Supreme Court has instructed lower courts to be 'attentive to the views

8

of the administrative entity appointed to apply and enforce the statute' and that 'deference is especially appropriate in the process of interpreting the Truth in Lending Act and Regulation Z.'" *Barlow v. Evans[1]*, 992 F. Supp. 1299, 1305 (M.D. Ala. 1997) (quoting *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565 (1980)) (footnote omitted). The court must defer to the FRB's official opinions unless they are "demonstrably irrational." *Ford Motor*, 444 U.S. at 565. With respect to refinancings, the Interpretations state:

> 1. Definition. A refinancing is a new transaction requiring a complete new set of disclosures. Whether a refinancing has occurred is determined by reference to whether the original obligation has been satisfied or extinguished and replaced by a new obligation, based on the parties' contract and applicable law. The refinancing may involve the consolidation of several existing obligations, disbursement of new money to the consumer or on the consumer's behalf, or the rescheduling of payments under an existing obligation. In any form, the new obligation must completely replace the prior one.
>
> . Changes in the terms of an existing obligation, such as the deferral of individual installments, will not constitute a refinancing unless accomplished by the cancellation of that obligation and the substitution of a new obligation.
>
> . . . .
>
> 2. Exceptions. A transaction is subject to § 226.20(a) only if it meets the general definition of a refinancing.

FRB Official Staff Interpretations, § 226.20. The Interpretations make it clear that to be a refinancing, a new obligation must completely replace the prior one, and changes in the terms of an existing obligation such as the deferral of individual installments do not constitute a refinancing unless there is a cancellation of the existing obligation. Here, there was no

---

[1] Abrogated on other grounds, *Turner v. Beneficial Corp.*, 236 F.3d 643 (11th Cir. 2000).

9

cancellation of the original pawn obligation. The original pawn ticket was renewed and extended. The maturity date was deferred. The original pawn ticket survived the deferral and was never cancelled. Therefore, the "subsequent loan agreements" alleged by Gunn were nothing more than receipts evidencing payment under the same pawn agreement she originally entered into, and that Regulation Z and the Official Staff Interpretations make it clear that no new TILA disclosures were required.

### 3. Gunn's Arguments

First, Gunn puts great reliance on a 1978 case, *Dennis v. Handley*, 453 F. Supp. 833 (N.D. Ala. 1978), decided before Regulation Z defined refinancings. The *Dennis* court found that pawn renewals, similar to Gunn's in the instant case, were in fact refinancings and thus subject to the disclosure requirements of TILA. *Dennis*, 453 F. Supp. at 835. However, effective in 1982, Regulation Z was amended to remove the provision relied upon by the *Dennis* court and to provide a definition for refinancings where none had previously existed. FRB Official Staff Interpretations, § 226.20. The amendments defined refinancing to mean an obligation which is satisfied and replaced by a new obligation, as discussed in detail above. *Id*. Thus, the amendments to Regulation Z abrogate the holding of *Dennis* and make it inapplicable and obsolete. The court is not persuaded by Gunn's arguments to the contrary.

Gunn next argues that the subsequent loan transactions fall within an exception to the Regulation Z definition of refinancings. *See* Regulation Z, 12 C.F.R. § 226.20(a) ("The following shall not be treated as a refinancing: (1) A renewal of a single payment obligation

10

with no change in the original terms.") Gunn contends the customer receipt must be construed as a refinancing because the pawn ticket "contains no material terms whatsoever which are common to" the customer receipt. (Gunn Br. 13.) The court notes that the customer receipt reflects the principal amount that remained after Gunn's partial payments and agrees with TitleMax that "[t]he partial payment of interest does not make a refinancing." (TitleMax Br. 22.) Therefore, the court finds that the exception does not apply.

Lastly, Gunn argues that the labels used on the pawn ticket and the customer receipt regarding account numbers and original account numbers proves the existence of a separate loan and not a renewal. This argument is unsupported and wholly unpersuasive.

For the foregoing reasons, the court holds that the bankruptcy court's order to dismiss Count I was proper.

B. *Count II – Validity of TitleMax's Lien Claim Dismissed by Bankruptcy Court*

Gunn argues that when she refinanced her pawn obligation, TitleMax failed to create a new security interest in her automobile and thus no longer has a valid lien on it. TitleMax argues the security interest granted in the original pawn transaction was never extinguished.

The Alabama Pawnshop Act states that "[a] pawnbroker shall have a lien on the pledged goods pawned for the money advanced and the pawnshop charge owed, but not for other debts due to the pawnbroker." Ala. Code § 5-19A-10(a). Gunn asserts that because she refinanced the original pawn obligation by customer receipts, the security interest in the

11

automobile that was granted in the pawn ticket is extinguished. She further asserts that the customer receipts evidence "other debts due to the pawnbroker" and thus are not secured by the automobile. However, as stated above, there has not been any "additional debt" because the pawn was extended and renewed, not satisfied. Gunn never redeemed or obtained possession of the automobile's title, nor does she allege she did. Therefore, the court holds that the security interest granted in the original pawn ticket was never extinguished and remains a valid and enforceable lien on the automobile, and the bankruptcy court's order to dismiss Claim II was proper.

## V. CONCLUSION

For the foregoing reasons, it is ORDERED and ADJUDGED that the decision of the bankruptcy court to dismiss Gunn's claim with prejudice is AFFIRMED. This matter is REMANDED to the bankruptcy court for further proceedings not inconsistent with this opinion.

DONE this 31st day of March, 2008.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE