[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 08-12197
Non-Argument Calendar

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 16, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-00233-CV-W-E
BKCY No. 06-80646

In Re: BERNICE GUNN,

                                                 Debtor.

---

BERNICE GUNN,

                                                 Plaintiff-Appellant,

versus

TITLE MAX OF ALABAMA, INC.,
d.b.a Title Max of Alexander City #1,

                                                 Defendant-Appellee.

---

Appeal from the United States District Court
for the Middle District of Alabama

---

**(September 16, 2008)**

Before BIRCH, DUBINA and CARNES, Circuit Judges.

PER CURIAM:

Bernice Gunn appeals the district court's judgment affirming the bankruptcy court's Fed. R. Civ. P. 12(b)(6) dismissal of both counts of her adversary complaint against TitleMax of Alabama, Inc. We affirm.

## I.

In October 2005 Gunn received a loan of $500.00 from TitleMax and pledged the title to her car as a security. Gunn received a four-page Pawn Ticket that contained required federal and state disclosures. It also stated that the pledger could, by paying a "pawnshop charge" instead of any loan principal, create deferral periods in which TitleMax would continue to hold the security and delay the loan's due date for thirty more days. Repayment of the loan, in the amount of $579.95, was due on November 21, 2005.

Between November 2005 and July 2006 there were a number of transactions during which Gunn paid interest in the form of monthly pawnshop charges and, apparently, some of the principal but not all of it. On July 21, 2006 Gunn paid TitleMax interest in the amount of $63.93, and received a Customer Receipt showing that on August 21, 2006 she would owe $399.82 plus another interest payment in the amount of $63.93. The Customer Receipt contained no federal

2

Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., disclosures, but stated: "You are only required to pay the Interest Due amount in order to extend or renew the Pawn Ticket."

Gunn filed a Chapter 13 bankruptcy petition in August 2006. TitleMax then made a claim in her bankruptcy case, asking for $463.75 and listing Gunn's car as collateral. Gunn responded by filing a two-count adversary complaint against TitleMax. Count 1 alleged that each of the monthly transactions between Gunn and TitleMax was a "Subsequent Loan Agreement" requiring new TILA disclosures. Count 2 asked the court to recognize that TitleMax's claim for $463.75 was independent of the original $500.00 pawn and thus unsecured. Gunn attached her original Pawn Ticket and her July 2006 Customer Receipt as Exhibits B and C to the complaint.[1]

TitleMax filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6), contending that the monthly transactions between November 2005 and July 2006 were merely extensions of the original pawn agreement and thus did not require TILA disclosures. The bankruptcy court granted TitleMax's motion, dismissing

---

[1] These documents are properly before us because Gunn incorporated them into her complaint. See Bickley v. Caremark RX, Inc., 461 F.3d 1325, 1329 n.7 (11th Cir. 2006) ("where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleading for purposes of Rule 12(b)(6) dismissal.") (quotation marks omitted).

3

Case 06-08049   Doc 35   Filed 09/16/08   Entered 09/23/08 12:58:07   Desc Main
Document    Page 3 of 9

Gunn's complaint with prejudice. The district court affirmed. Gunn timely filed a notice of appeal to this Court.

## II.

We review de novo the legal conclusions of the bankruptcy court. Asbestos Settlement Trust v. City of New York (In re Celotex Corp.), 487 F.3d 1320, 1328 (11th Cir. 2007). In deciding a motion to dismiss for failure to state a claim, this Court accepts the factual allegations in the plaintiff's complaint and construes them in the light most favorable to her. Young Apartments, Inc. v. Town of Jupiter, 529 F.3d 1027, 1037 (11th Cir. 2008). However, the plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955, 1965 (2007). This Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoting Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 2944 (1986)).

## III.

Gunn contends that TitleMax violated TILA's disclosure requirements in connection with their July 21, 2006 transaction. TILA requires meaningful disclosures to customers in consumer credit transactions, and in closed-end transactions like the ones between Gunn and TitleMax, the disclosures must be

4

given before credit is extended. 15 U.S.C. § 1601(a); 15 U.S.C. § 1638(b)(1); 12 C.F.R. § 226.18. The Federal Reserve Board has promulgated Regulation Z, 12 C.F.R. § 226.1(a), to implement TILA. It has also issued Official Staff Interpretations of Regulation Z, and the Supreme Court has instructed that these interpretations be dispositive unless they are "demonstrably irrational." Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 565 (1980). Neither party disputes the applicability or rationality of Regulation Z and its Official Staff Interpretations.

It is undisputed that "a refinancing is a new transaction requiring new disclosures to the consumer," Regulation Z, 12 C.F.R. § 226.20(a), but that a mere extension of an earlier deal, even if the terms change, does not trigger new disclosure requirements. 12 C.F.R. Pt. 226, Supp. I at § 226.20 ("Redisclosure is no longer required for deferrals or extensions."). Gunn labels the July 2006 transaction a "refinancing" of her November 2005 pawn. TitleMax labels the transaction a mere extension of the original pawn agreement.

Gunn's argument fails because it relies on two cases that were decided under an earlier, much friendlier set of regulations than those that existed in 2006 and on a contorted interpretation of the Alabama Pawnshop Act, Ala. Code § 5-19A-1 et seq.

5

Gunn relies primarily on Dennis v. Handley, 453 F. Supp. 833 (N.D. Ala. 1978), and on Chapes, Ltd. v. Anderson (In re Scaife), 825 F.2d 357 (11th Cir. 1987). Both cases involved diamond rings that were pawned. In both cases, further transactions repeatedly extended the pawns. Both courts, applying a pre-1982 version of Regulation Z, found that extensions of existing pawn agreements were refinancings and thus did require TILA disclosures. Dennis, 453 F. Supp. at 835; In re Scaife, 825 F.2d at 361. However, more than twenty years before the transactions between Gunn and TitleMax occurred in 2005 and 2006, the Federal Reserve Board created a new version of Regulation Z, which became mandatory in October 1982. Compare 12 C.F.R. § 226.8(j) (1981) with 12 C.F.R. § 226.20 (2006).

The Official Staff Interpretation of the current Regulation Z states: "1981 changes: While the previous regulation treated virtually any change in terms as a refinancing requiring new disclosures, this regulation limits refinancings to transactions in which the entire original obligation is extinguished and replaced by a new one. Redisclosure is no longer required for deferrals or extensions." 12 C.F.R. Pt. 226, Supp. I at § 226.20. Thus, the law has changed in a pivotal way since Dennis and Scaife, and the amended Regulation Z significantly narrows the field of transactions that qualify as "refinancing."

6

The current regulations define "refinancing" as "when an existing obligation... is satisfied and replaced by a new obligation." 12 C.F.R. § 226.20(a). The Official Staff Interpretations of the regulation note that:

> [W]hether a refinancing has occurred is determined by reference to whether the original obligation has been satisfied or extinguished and replaced by a new obligation.... Changes in the terms of an existing obligation, such as the deferral of individual installments, will not constitute a refinancing unless accomplished by the cancellation of that obligation and the substitution of a new obligation.

12 C.F.R. Pt. 226, Supp. I at § 226.20. Gunn contends that her original pawn was "cancelled" or "extinguished" within the meaning of 12 C.F.R. § 226.20 and its Official Staff Interpretation by the Alabama Pawnshop Act. Gunn argues that the Alabama Pawnshop Act cancelled her original November 2005 pawn because, in her view, the law "does not make any provision whatsoever for the renewal or extension of the maturity date of the pawn transaction." However, Gunn's focus is misplaced. The provisions that she cites limit the amount of permissible pawnshop charges to 25 percent of the principal per month and grant the pledger thirty days' grace period beyond the original maturity date in which to redeem her pawn. See Ala. Code §§ 5–19A–6; 5–19A–10(b); 5– 19A–7(a). None of these sections of the Alabama Pawnshop Act prohibit pledgers and pawnbrokers from agreeing to extensions of the original maturity date. In fact, both the original

7

Pawn Ticket given to Gunn in October 2005 and the Customer Receipt she received in July 2006 clearly provide for extensions of the original loan.

The $579.95 that Gunn owed TitleMax was neither "satisfied and replaced" nor cancelled. Gunn's Customer Receipt, received in July 2006, gives no indication that TitleMax ever loaned Gunn any money beyond the $500.00 it had given her in October 2005, and Gunn does not claim otherwise. Neither party alleges that Gunn ever entirely paid the $579.95 that she owed TitleMax in November 2005, either on her own or with refinancing assistance from TitleMax.

Further, the receipt is divided into two categories, "Today's Payment Details" and "Next Payment Information." It designates $399.82 as the "Principal Due" in August and refers to the possibility of extending or renewing the original Pawn Ticket. The only logical reading of the July 2006 Customer Receipt is that the "Principal Due" of $399.82 reflects the remaining principal due from the original loan. The Customer Receipt is not an inadequate new pawn ticket, but instead a receipt showing that Gunn made a monthly interest payment of $63.93 and that she owed another interest payment the next month. All of this relates to the original loan.

8

There was no satisfaction and replacement nor cancellation, and thus no "refinancing" under TILA. No further disclosures were required. See Regulation Z, 12 C.F.R. § 220(a). Accordingly, the facts that Gunn has pleaded do not state a claim under TILA, and the district court properly granted TitleMax's Rule 12(b)(6) motion to dismiss.

## IV.

Gunn contends that because the Alabama Pawnshop Act allegedly cancelled the October 2005 pawn of her car, TitleMax's lien on her vehicle was extinguished and their July 2006 transaction was unsecured.

However, the Alabama Pawnshop Act does not prohibit extensions or renewals of an initial maturity date, and the Pawn Ticket and Customer Receipt both allow for such extensions. Because we have concluded that the initial $500.00 pawn was merely extended, not satisfied and replaced nor cancelled, TitleMax's initial lien on Gunn's vehicle remains valid. Ala. Code § 5–19A–10(a) ("A pawnbroker shall have a lien on the pledged goods for the money advanced and the pawnshop charge owed.").

**AFFIRMED.**

9